# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**493**

**KA 15-00029**

PRESENT: SMITH, J.P., CARNI, DEJOSEPH, NEMOYER, AND TROUTMAN, JJ.

---

THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,

V                                                    MEMORANDUM AND ORDER

STEPHEN DAWSON, ALSO KNOWN AS "SHOOTER STEVE,"
DEFENDANT-APPELLANT.

---

ERICKSON WEBB SCOLTON & HAJDU, LAKEWOOD (LYLE T. HAJDU OF COUNSEL),
FOR DEFENDANT-APPELLANT.

JOHN J. FLYNN, DISTRICT ATTORNEY, BUFFALO (NICHOLAS T. TEXIDO OF
COUNSEL), FOR RESPONDENT.

---

Appeal from a judgment of the Supreme Court, Erie County (Russell
P. Buscaglia, A.J.), rendered December 3, 2014. The judgment
convicted defendant, upon a jury verdict, of kidnapping in the first
degree and robbery in the first degree.

It is hereby ORDERED that the judgment so appealed from is
unanimously affirmed.

Memorandum: Defendant appeals from a judgment convicting him
upon a jury verdict of kidnapping in the first degree (Penal Law
§ 135.25 [2] [a]) and robbery in the first degree (§ 160.15 [4]). As
we noted in the appeal by a codefendant, "[t]he charges arose from an
incident in which the victim was held captive, pistol whipped, and
then repeatedly humiliated, including being forced to lick his own
blood from a boot of one of the perpetrators. The perpetrators made a
video recording of parts of the incident and posted the recording on
social media" (*People v Woods*, 142 AD3d 1356, 1357).

Contrary to defendant's contention, Supreme Court properly
refused to suppress his statements to the police. The evidence from
the suppression hearing established that police officers were
searching for the victim after viewing the video recording of him
being beaten, and his family members reported to the police that
defendant, who was riding a bicycle in a certain location, knew where
the victim was being detained. Based on that information, an officer
stopped defendant, and said that defendant needed to speak to a
detective who was on his way to that location. Defendant immediately
said that he could find the missing person on his own if the officer
would let him go. Shortly thereafter, a detective arrived and told
defendant that they were searching for the victim, and the detective
questioned defendant about the victim's whereabouts. Defendant

indicated that he would have to walk by the house in which the victim was detained so he could show the officers where it was but, after they indicated that he would not be released, he agreed to allow the initial officer to drive him in the patrol vehicle.  As they drove, he pointed out a house and said that the victim was in it.

As the People correctly concede, defendant was in custody at the time that he spoke to the officers (*see generally People v Yukl*, 25 NY2d 585, 589, *cert denied* 400 US 851) and, "[a]s a general rule, a person who is in custody cannot be questioned without first receiving *Miranda* warnings" (*People v Doll*, 21 NY3d 665, 670, *rearg denied* 22 NY3d 1053, *cert denied* ___ US ___, 134 S Ct 1552, *affg* 98 AD3d 356).  Nevertheless, we agree with the court that the initial statement, i.e., the one defendant made before the detective arrived, was spontaneous, inasmuch as it was "in no way the product of an interrogation environment [or] the result of express questioning or its functional equivalent" (*People v Harris*, 57 NY2d 335, 342, *cert denied* 460 US 1047 [internal quotation marks omitted]; *see People v Rivers*, 56 NY2d 476, 480, *rearg denied* 57 NY2d 775; *People v Wearen*, 19 AD3d 1133, 1134, *lv denied* 5 NY3d 834).  Thus, the court properly refused to suppress that statement.

Furthermore, the court also properly refused to suppress defendant's next set of statements, in which he identified the house in which the victim was being held.  At that time, the police were aware that the victim was being held and were seeking information from defendant regarding the victim's location in order to rescue him.  "Given the legitimate concern of the police for the safety of the victim, the questioning of the defendant regarding the victim's . . . whereabouts, without first advising him of his *Miranda* rights . . . , was lawful" (*People v Boyd*, 3 AD3d 535, 536, *lv denied* 2 NY3d 737; *see Doll*, 98 AD3d at 364; *People v Zalevsky*, 82 AD3d 1136, 1138, *lv denied* 19 NY3d 978, *reconsideration denied* 19 NY3d 1106).

We reject defendant's contention that the evidence is not legally sufficient to support the conviction.  Viewing the evidence in the light most favorable to the People (*see People v Contes*, 60 NY2d 620, 621), and affording them the benefit of every favorable inference (*see People v Bleakley*, 69 NY2d 490, 495), we conclude that the evidence is legally sufficient to establish the elements of the crimes of which defendant was convicted (*see id.*).  Furthermore, viewing the evidence in light of the elements of the crimes as charged to the jury (*see People v Danielson*, 9 NY3d 342, 349), we reject defendant's further contention that the verdict is against the weight of the evidence (*see generally Bleakley*, 69 NY2d at 495).

Finally, the sentence is not unduly harsh or severe.

Entered:  April 28, 2017                    Frances E. Cafarell
                                            Clerk of the Court